GEORGE T. ROGERS, Plaintiff, *v.* JOSEPH H. ADAMS and THE TEXAS COMPANY, Defendants.

Supreme Court, New York Special Term, July, 1922.

Patents — when failure of assignee of patent to make reasonable inquiry as to outstanding interests of which it had knowledge or the means of knowledge deprives it of the status of a bona fide purchaser without notice — equity — right of prior assignee to recover from later assignee his interest in patents.

A party in duty bound to make inquiry is in equity affected with knowledge of all which he would have discovered had he performed his duty. In such case the means of knowledge are in equity equivalent to knowledge itself.

Where facts of which the assignee of a patent knew and those which it is chargeable with the duty of finding out plainly point to the probable existence of a right or title in conflict with that which it is about to buy, its failure to make reasonable inquiry deprives it of the status of a *bona fide* purchaser without notice and in that regard its negligence at the time of the purchase of the legal title amounts to a failure to do what a reasonably prudent man would do in the exercise of ordinary diligence.

In an action to establish ownership of certain patents, the individual defendant, an inventor seeking a specific result in the decarbonization of petroleum, made a contract to give a certain undivided interest in the results of the basic invention to plaintiff who from time to time advanced money to attain the end sought. Thereafter said individual defendant assigned the patent for the invention to the corporate defendant by written instrument referring in terms to " outstanding rights." *Held*, that as the facts known to the corporate defendant at the time of the assignment of the patent and those facts which it was chargeable with the duty of finding out plainly pointed to a probable existence of a right or title in conflict with that which it was about to buy, plaintiff was entitled to a judgment directing said defendant to assign to plaintiff the undivided interest in the invention, which at the time of the trial he held unimpaired by any overtures he had hitherto made, said assignment to include such patents as had issued prior to the receipt by said corporate defendant of formal notice of plaintiff's rights and his interest in all patents issued to the individual defendant for the invention in question which have issued since the receipt of such notification or which may hereafter issue.

In the circumstances the failure of the corporate defendant to make inquiry as to " outstanding rights " deprived it of the status of a *bona fide* purchaser without notice.

Said defendant was also guilty of negligence at the time of the assignment of the legal title to the patent in failing to do what a reasonably prudent man would have done in the exercise of ordinary diligence.

ACTION to establish ownership of certain patents and patent applications.

*Wellman, Smyth & Scofield* and *Fish, Richardson & Neave* (*Herbert C. Smyth* and *Merrill E. Clark*, of counsel), for plaintiff.

*Drury W. Cooper*, for defendant Adams.

*Oeland & Kuhn* (*Isaac R. Oeland*, of counsel), for defendant Texas Company.

McAVOY, J. Adams is an inventor. Rogers, when he dealt with Adams anent the subject-matter here involved, was *in terra incognita*. The inventor was seeking a specific result in the decarbonization of petroleum — or cracking its molecule, as the phrase has it — so that a lighter or more volatilized oil might flow where a heavier oil flowed before. Here was the basic idea, the broad principle, the invention as the lay mind grasps the concept when one speaks of a similar emprise in physics, chemistry or science generally. That an apparatus was being used at the

precise time of the contract (which set over a thirty per cent, subsequently increased to forty per cent interest in the invention), which was operated solely by pressure as distinguished from an operation solely through a vacuum, is not asserted. Pressure had been used as one of the means prior to the contract and subsequent thereto. Vacuum was used before, at and after the time of the contract. The means were not the object of purchase and advancement of moneys. It was the end sought for which Rogers paid. I do not find that Adams really intended to restrict him in his interest to a per centum of the invention's results which arose out of an apparatus having a capacity for extracting carbon from oils through internal electric heat maintained at an incandescent temperature while the fluid was carried through the tanks, converter and condenser under vacuum conditions. On the contrary, correspondence, circumstance, testimony, photographs, drawings and many other types of exhibits all point to the original intent to transfer to the plaintiff the results of the basic invention by whatever mode its ultimate success was accomplished. It is almost demonstrated that this is a correct conclusion from the words of the *caveat* which Adams showed to Rogers as the warp and woof of what he was giving him. Although Rogers had little faith in the invention and would have been content with a return of his money invested on many occasions throughout the years which have intervened, no proposition of his was ever carried out, and he remains now, so far as Adams is concerned, unpaid and holding his interest unimpaired by any of the overtures he has hitherto made. The determination of the problem, in so far as it affects the Texas Company, is one which is almost wholly legal and equitable in its nature. This branch of the cause rests upon the conclusion to be made for or against the proposal that the patents, their claims, disclosures, references and the contracts with prior assignees of the patents No. 1 and No. 3, gave ground for investigation beyond mere legal title and for a search into "outstanding rights" not disclosed by the record, which, if examined, would have acquainted the company with Rogers' interest. Equitably, the assignee is charged with notice if he ought to have known in the exercise of reasonable diligence and prudence, "*quod oportet fieri pro facto censatur.*" Legally, he may follow the record for an assignment of the title to the patent. The Texas Company had no actual notice of Rogers' interest when it paid the moneys to Adams for his interest. There were, however, clauses in the agreements between Meyers and Adams, known as the "Pittsburg option," affecting patent No. 3, and in the Hanover Trading Company contract, which affected patent No. 1, which

will be here restated to indicate the nature of the alleged notice which their combined phrasing purports to give and to reason and conclude therefrom whether such instruments and their inevitable lead equitably charges a purchaser with a lack of *bona fides* in failing to pursue them to the uttermost. The Pittsburg option recites in clause 7: " If it is found advisable to obtain and hold title to my invention for the application of incandescent heat under U. S. Pat. No. 976975, ' Oil Converting Process,' Joseph H. Adams, November 29, 1910, I will negotiate for the purchase of outstanding rights for the sum of $25,575.00, this sum being required to cover the cash investment of parties other than the inventor and which can be had from 25 per cent. of the income of holding company, * * *." Does this relate wholly to legal title? Obviously not. That was of record. Does it portend additional rights acquired by *parties other than the inventor who had made cash investment therein?* It can hardly be denied that it does from the language in *ipsissimis verbis.* By reason of the interrelated features which have had a constant use in the records and photographs of the Adams process apparatus dating from 1903 to 1915, the three patents and their applications in question disclose to the original through references found in the later two that their various claims are all elements of the one basic idea. This should have been obvious to the searcher or examiner who reported to the responsible officers of the Texas Company, and put upon the purchasers, in order that they may be considered *bona fide,* the duty of diligent inquiry to determine whether any contract conveying outstanding rights to others than the inventor ought to be construed as a conveyance of the entire invention disclosed in the original application for patent No. 1, and of any and all claims that could thereafter be predicated thereon. The testimony shows that no inquiry whatever was made as to what outstanding interest there might have been beside the actual legal title, whose ownership was discoverable from the public record. Neither Adams nor Messrs. Cary and Robinson, nor the Hanover Trading Company, was asked who the parties were other than the inventor who had outstanding rights beside the assignment of record in the invention for the internal application of incandescent heat under United States patent No. 976975. If inquiry were made of the Hanover Trading Company, the assignee of patent No. 1, and one of the holders of outstanding rights referred to in the Pittsburg option, the contract between Messrs. Adams and Cary and Robinson relating to the interest subsequently transferred to the Hanover Trading Company would have disclosed that Cary and Robinson had obtained a forty per cent interest in Adams'

" invention of a process and apparatus for refining and extracting carbon and other properties from liquids, fluids and oils by electricity, invented and to be further developed by him as set forth and described in the caveat filed by him in the office of the commissioner of patents at Washington, D. C., on the 8th day of January, 1907, and also in all improvements and developments thereof and in and to all patent rights and letters patent, both domestic and foreign, that may be granted thereon or any part thereof and   *   *   *   all improvements, changes or developments in such process and apparatus and to any incidental or collateral patentable inventions which may be discovered in the course of further experimentation therewith." This contract contains in its 4th paragraph a reference to the interest of Rogers, in which it is agreed that Messrs. Cary and Robinson will lay aside a certain sum for the purpose of acquiring an absolute assignment from Rogers of his entire interest " in the invention and process above referred to." Thus, even so little as an inquiry of the persons mentioned as holding the legal title to patent No. 1 would have indicated directly the position of Rogers and his rights in the premises. The facts which the defendant Texas Company knew, and those which it is chargeable with the duty of finding out, must be taken to have pointed plainly to the probable existence of a right or title in conflict with that which they were about to buy. The failure to make reasonable inquiry under the circumstances deprives them of the status of the *bona fide* purchaser without notice, and charges them with a negligence at the time of purchase of the legal title, which, while amounting to less than a deliberate shutting of the eyes to avoid light, amounts to a failure of what the reasonably prudent man would do in the exercise of an ordinary diligence. When inquiry is a duty, the party bound to make it is " affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself." The fact that the inquirer would have found that Rogers' interest could be acquired for a specific sum at the time of the purchase by the Texas Company of its interest in the process, and that the subject of discussion then was as to how and when the balance of the money due was to be paid, does not show that Rogers had abandoned all claims and interest in Adams' patents, or that he had released his claims in the invention or had liquidated his interest in the July, 1907, contract by substituting therefor a demand for a sum of money, to wit, the amount invested in the enterprise. Adams' letter to his wife shows that Rogers' forty

6

per cent interest was intact. This letter, written after the interview of April, 1919, indicates no waiver or abandonment or conversion of the money of the interest into a debt. Whatever those rights and interest were and for whatever price they might have then been purchased, they were not purchased and extinguished, and their value is not to be measured by that for which Rogers would have then transferred them. Plaintiff is entitled to a judgment directing the Texas Company to assign to Rogers the forty per cent undivided interest in the invention, which will include such patents therefor as had issued prior to receipt by the Texas Company of formal notice of Rogers' rights, and an interest in all Adams' patents for that invention which have issued since receipt of the notification or which may hereafter issue. So that the decree may make specific direction of the particular patents to which its judgment refers it will be necessary to submit the twenty or more patents and applications therefor which Adams has assigned to the Texas Company, as was stipulated upon the trial, so that the court may determine whether the patents and applications are for the basic invention, the interest in which was transferred to Rogers in 1907.

Judgment accordingly.